PROVOSTY, J.
The defendant company owns and operates a railroad for hauling logs to its sawmill. Incidentally it carries freight; but no passengers, except that it allows all to ride free of charge in the cabs of the locomotives who wish. Plaintiff, 42 years old, who at one time had been a teamster hauling logs to the railroad of the defendant company, but was no longer in its employ, was thus riding free in the cab of a locomotive which was pulling a .heavy log train when a wreck occurred, and he receiv *207 ed very serious injuries, for which he brings this suit in damages.
In the petition the defendant company is charged with having been negligent in that the locomotive was “an old dilapidated dangerous concern which had been out of repair for a long time,” so defective as to have to be operated backward, as was being done at the time of the wreck; that the track was improperly constructed; that the rails were defective; that many of the cross-ties were rotten, or defective; that the grade was too steep; and, finally, that the train was being run at excessive speed down a steep grade.
As a matter of fact, the track was properly constructed ; level; in good condition; the speed was less than usual, owing to the wetness of the track; the locomotive was being operated as usual; that is, forward going out and backward returning, because there was m> way of turning it, and the engine was the best in the defendant company’s service, and had been thoroughly overhauled and put in first-class condition in the Ruston repair shops in Alexandria five months previously, and since then had seen little service and met with no mishap.
Exactly what caused the wreck no one knows. But the fireman, whose brother was the engineer, and was one of the four persons killed in the wreck, testified that the brake beam was not equipped with certain chains that are usually provided for holding it up in case it gets loose, as otherwise it may drop upon the rails and “more than likely” cause a derailment, as not infrequently happens; and plaintiff has shifted his ground of negligence to the asserted absence of these chains.
It seems that these chains are useful in the manner thus stated; but no other witness testifies to their absence, and neither this fireman nor his brother, the engineer, ever called attention to this asserted defect; and this locomotive was allowed to run on the tracks of the St. Louis, Iron Mountain & Southern Railroad under its own steam from the repair shops in the city of Alexandria to Urania, where the sawmill of the defendant company is located, and the evidence shows that a stranger locomotive will not be allowed to use the tracks of a regular passenger railroad unless first inspected and found to be in perfect condition.
Under these circumstances, we doubt the sufficiency of the testimony of this one witness, whose feelings may have been more or less enlisted in the matter, for establishing to a legal certainty the absence of these chains. But if the benefit of the doubt be given to plaintiff, and the absence of these chains be considered to have been proved, and their importance be conceded, is the defendant company liable?
We think not. Conceding that plaintiff was not a trespasser, nor even a mere licensee, but in a sense a passenger, he could not expect that the same care would, or could, be taken for his safe carriage in the cab of the locomotive of this log train as on a regular passenger train. He must be held to have “assumed the risks of that mode of travel.” Elliott on Railroads (2d Ed.) vol. 4, § 1582, p. 389. In the case mainly relied on by his learned counsel (Shoemaker v. Kingsbury, 12 Wall. 369, 20 L. Ed. 432) the court said:
“It is evident that the defendants were not subject to any such stringent obligations and responsibilities as are here mentioned”
—meaning “the obligations and responsibilities which attach to common carriers of passengers.” That was the case of a construction train upon which a passenger was being carried for hire.
We do not see that the owners of this log railroad could have been expected to do more than they did, namely, have their engine put in thorough repair by a fully competent and qualified repair shop, and employ competent men to operate it. If the operation of the engine backward had the effect of increasing *209 the clanger, plaintiff must be held to hare assumed that risk. In the case just cited, the court said:
He “was well aware that there were no turntables pn a portion of the route, a fact which compelled the defendants to reverse the engine on the return of the train. * * * He, therefore, took upon himself the risks incident,” etc.
The judgment rejecting plaintiff's demand is affirmed.